[Cite as *State v. McAllister*, 2016-Ohio-8262.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee | |
| -vs- | |
| | Case No. 2016CA00110 |
| JOHN L. MCALLISTER | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Alliance Municipal Court, Case No. 2016CR00507

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      December 19, 2016

APPEARANCES:

For Plaintiff-Appellee

CAITLYN R. SCHNEIDER
JENNIFER ARNOLD
MATTHEW KUHN
Law Director's Office
470 East Market Street
Alliance, Ohio 44601

For Defendant-Appellant

DEREK LOWRY
Crawford, Lowry & Assoc.
116 Cleveland Avenue NW
Suite 800
Canton, Ohio 44702-1732

*Hoffman, P.J.*

{¶1} Defendant-appellant John Lawrence McAllister appeals his convictions entered by the Alliance Municipal Court on one count of theft by deception, in violation of R.C. 2913.02(A)(3); and one count of possessing criminal tools, in violation of R.C. 2923.24(A). Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On March 4, 2016, Hailey Miku, an infant child, was found dead in her home. Appellant is the estranged grandfather of Hailey Miku. On March 10, 2016, the child was laid to rest at Forest Hills Cemetery. The funeral expenses and burial were paid for in full through private donations. Appellant and his co-defendant, Lisa Dalesandro, collected money donations in homemade tins for the alleged purpose of paying the funeral expenses for Hailey Miku. Appellant is the estranged grandfather of the infant child.

{¶3} On March 25, 2016, Tamara Mackey, the aunt of Hailey Miku, learned of Dalesandro's actions via social media. Mackey had personal knowledge the funeral expenses and burial site for Hailey Miku had been paid in full through a private donation and a separate Go Fund Me account.

{¶4} On March 25, 2016, Mackey confronted Appellant and Dalesandro, identifying them by name. She then followed them to the parking lot of a Marc's store, where she observed Dalesandro soliciting donations for the funeral expenses of Hailey Miku.

**{¶5}** Tamara Mackey made contact with Officer Bartolet of the Alliance Police Department to report Dalesandro's conduct.[1] Officer Bartolet proceeded to the Marc's store and observed Lisa Dalesandro holding coffee cans with the deceased child's name, asking for money for a headstone for the child. Officer Bartolet had been advised the headstone and funeral expenses had been paid in full per his conversation with Tamara Mackey.  He then approached Dalesandro.

**{¶6}** Upon approach, Dalesandro informed Officer Bartolet she was working with Appellant, her boyfriend, to solicit the funds. Bartolet testified he gathered information Appellant was in a car in the parking lot, but he had departed.

**{¶7}** Officer Bartolet learned through his investigation Appellant and Dalesandro solicited funds in person and through leaving cans at Munchy's Bar and Drive-Thru.

**{¶8}** Kelly Andrews of Munchy's Bar and Drive-Thru testified Dalesandro left two homemade tins at Munchy's for the purpose of soliciting funds for the funeral expenses of Hailey Miku. On March 25, 2016, Appellant returned to collect the donated monies and left the emptied cans at the bar for additional donations. Appellant also left his phone number at the business in the event someone wanted to make a larger donation.

**{¶9}** Prior to leaving Munchy's, Appellant solicited funds in person at the drive-thru, approaching customers and telling them about his granddaughter and collecting monies for the funeral/headstone.

**{¶10}** On March 26, 2016, Appellant returned to Munchy's Bar and Drive-Thru to retrieve the funds.  Andrews confronted Appellant about the investigation, and informed

---

[1] Tamara Mackey's police report taken on March 25, 2016, did not mention Appellant or his conduct.

Appellant he would need to collect the cans at the Alliance Police Department. Appellant proceeded to leave the bar.

{¶11} Appellant was charged with one count of theft, by deception, in violation of R.C. 2913.02(A)(3); and one count of possessing criminal tools, in violation of R.C. 2923.24(A).

{¶12} The matter proceeded to jury trial on May 5, 2016. Following the jury's return of a guilty verdict on both counts, the trial court conducted a sentencing hearing and imposed a term of one hundred forty days in jail on the theft by deception count, and one hundred eighty days on the possession of criminal tools count. The trial court ordered the terms run consecutively.

{¶13} Appellant appeals, assigning as error:

{¶14} "I. THE TRIAL COURT ERRED BY IMPROPERLY ADMITTING HEARSAY TESTIMONY.

{¶15} "II. THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

{¶16} "III. THE TRIAL COURT'S [sic] FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶17} "IV. THE TRIAL COURT IMPROPERLY CONSIDERED APPELLANT'S PRE-ARREST SILENCE IN SUPPORT OF MAXIMUM AND CONSECUTIVE SENTENCES."

II.

{¶18} We find it best to address Appellant's second assignment of error first, as our analysis and disposition of Appellant's argument therein has bearing on the first assigned error.

{¶19} In the second assignment of error, Appellant asserts he was denied the effective assistance of counsel at trial. Specifically, Appellant cites counsel's failure to object to alleged hearsay testimony, the failure to object to opinion evidence, and trial counsel's failure to pursue a motion in limine to exclude any testimony regarding Appellant's pending case in the Canton Municipal Court.

{¶20} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See, Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, citing *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶21} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶22} Even if a defendant shows counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The weight of the evidence and determination of the credibility of the witnesses lie with the trier of fact.

{¶23} Initially, Appellant maintains his counsel was ineffective in failing to pursue a motion in limine to exclude testimony relative to Appellant's pending case in the Canton Municipal Court. At trial, Officer Cook testified, during his investigation of the allegations, he called Officer Bartolet as he had knowledge Officer Bartolet was investigating a similar incident involving Dalesandro, wherein "they were in the Canton area trying to obtain donations in the same way that [Officer Cook was] investigating." Tr. at 124.

{¶24} On cross-examination by Appellant's counsel, Tamara Mackey testified as to Dalesandro and Appellant "getting in trouble in Canton doing the same thing" as alleged herein. Tr. at 162. Appellant's counsel then inquired of Mackey whether she was assisting the police in the Canton investigation, to which she stated she was not involved in the investigation. Id. Mackey testified she had knowledge of the investigation. Counsel then inquired whether the Canton allegations had been resolved, to which Mackey replied there had been no resolution. Id.

{¶25} The testimony concerning the Canton Municipal Court case established there had not yet been a resolution of the allegations. Appellant's guilt had not been established. Tr. at 162. [2] Though the testimony may well have been prejudicial, we find it does not rise to the level of creating a reasonable probability the outcome of the trial would have been different had the testimony been excluded.

---

[2] While not specifically so instructed regarding the pending charge in Canton Municipal Court, the jurors were instructed regarding the presumption of innocence in this case and would likely understand such presumption of innocence would apply to the Canton Municipal Court case.

{¶26} Appellant also argues his trial counsel was ineffective in failing to object to hearsay testimony. First, Appellant cites the unauthenticated letter from the funeral home testified to by Tamara Mackey. Mackey testified at trial she had personal knowledge the funeral expenses were paid for and no remaining balance was due. The State introduced Exhibit E, a letter from Forest Hill Cemetery to Justina Longwell stating, "In regard to baby Hailey Miku's mausoleum entombment at Forest Hill cemetery, there are currently no charges due, the goods and services were donated." Appellant asserts the letter was hearsay.

{¶27} While we agree the letter was hearsay, we note the letter was cumulative to the testimony of Mackey herself. As such, we cannot find a reasonable probability exists the outcome of the trial would have been different had Appellant's counsel objected to the introduction of the letter and the letter been excluded.[3]

{¶28} Appellant next cites the testimony of Officer Bartolet regarding a statement made by Lisa Dalesandro that Appellant was in the car at the Marc's store on the date of the incident. Appellant asserts such was inadmissible hearsay testimony. Officer Bartolet testified at trial, he learned through his investigation, through Dalesandro and Mackey, Appellant had driven Dalesandro to the Marc's parking lot, but after the arrest of Dalesandro, the car and Appellant could not be located.

{¶29} Tamera Mackey testified prior to making contact with Dalesandro in the Marc's parking lot, she approached the car and identified Appellant and Lisa Dalesandro by name as the occupants of the vehicle. She testified she followed Appellant and Dalesandro into the parking lot, personally observing and videotaping Dalesandro

---

[3] Furthermore, had an objection been made and sustained, the State may have been able to introduce the evidence later through the testimony of a representative from the funeral home.

soliciting funds for the funeral expenses of Hailey Miku. Appellant was not present in the parking lot, and she did not include his name in the police report as she was focused on the activities of Dalesandro. Tr. at 158.

{¶30} Officer Cook of the Alliance Police Department testified he never confirmed Appellant's presence in the parking lot, nor did he confirm Appellant had left when the police arrived. We find no reasonable probability exists the outcome of the trial would have been different but for the admission of this hearsay testimony.

{¶31} Appellant next cites the testimony of Officer Cook regarding statements made by Kelly Andrews, an employee of Munchy's Bar and Drive Thru, concerning Appellant bringing in the cans and soliciting funds at Munchy's for the funeral expenses of Hailey Miku.

{¶32} Kelly Andrew's herself testified as to Appellant's conduct in soliciting the funds for the funeral expenses. She was subject to cross-examination. Because her statement to Officer Cook was cumulative to her trial testimony, we again find Appellant cannot meet the prejudice prong of *Strickland.*

{¶33} Appellant also cites Officer Cook's testimony the actions of Appellant constituted deceit. At trial, Appellant's counsel inquired of Officer Cook,

Q.     Okay. Um so with regard to your complaint, you filed the complaints against Mr. McAllister, right?

A.  Yes I did.

Q.     Okay. And you alleged that he knowingly by deception collected donations, right?

A.  Yes.

Q.  Okay. Who did you talk to that he deceived?

A.  Ms. Andrews was the person that made the complaint to me.

Q. Did Ms. An--, -- did he deceive Ms. Andrews?

A.  You'll have to ask her.

Q. During the investigation, you didn't reveal that he deceived Ms. Andrews, did you?

A.  I believe Ms. Andrews did state to me that she did make donations prior to knowing the circumstances with the cans.

Q.  Did she say to you that Mr. McAllister spoke to her and deceived her?

A. No.

***

Q.  Okay. You also state in your complaint for theft that he deceived—which today you're—you don't' have any evidence of that – "that the funeral expenses were already taken care of and that the defendant was keeping money for personal use," right?

A. Yes.

Tr. at 127-128.

{¶34}  On re-direct, the State inquired of Officer Cook whether he would consider Appellant's actions deceit based upon his experience. Officer Cook answered, yes. Tr. at 135.

{¶35}  While the officer's opinion as to the ultimate issue is properly left for the jury to decide, we find Appellant's counsel opened the door when he inquired of Officer Cook whether the actions of Appellant amounted to deceit. Officer Cook deferred to the opinion

of Kelly Andrews at that time. Tr. at 128-130. We find counsel's cross-examination of Officer Cook amounts to trial strategy. Further, Kelly Andrews testified she did donate monies based upon Appellant's statements to her and to other customers of Munchy's Bar and Drive-Thru. Even if the failure to object to Officer's Cook's testimony on redirect-examination fell below the wide range of reasonable professional assistance, we do not find a reasonable probability exists the outcome of the trial would have been different had Officer Cook's opinion regarding Appellant's deceit been excluded.

**{¶36}** Appellant's second assignment of error is overruled.

I.

**{¶37}** In the first assigned error, Appellant maintains the trial court erred in permitting hearsay and opinion testimony at trial.

**{¶38}** Appellant did not object to the testimony at trial; therefore, we review Appellant's argument under a plain error analysis.

**{¶39}** In order to prevail under a plain error analysis, Appellant bears the burden of demonstrating the outcome clearly would have been different but for the error. *State v. Long,* 53 Ohio St.2d 91 (1978). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

**{¶40}** As set forth in our analysis and disposition of Appellant's second assignment of error, we do not find a reasonable probability exists the outcome of the trial would have been different had the challenged testimony been excluded. Accordingly, we do not find any of the alleged errors rises to the more stringent level of plain error.

**{¶41}** The first assignment of error is overruled.

III.

**{¶42}** In the third assignment of error, Appellant maintains his convictions for theft by deceit and use of criminal tools were against the manifest weight and sufficiency of the evidence. We disagree.

**{¶43}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

**{¶44}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶45}** Appellant was convicted of theft by deception, in violation of R.C. 2913.02(A)(3), which reads, in pertinent part,

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> ***
>
> (3) By deception;

**{¶46}** Appellant was further convicted of possession of criminal tools, in violation of R.C. 2923.24(A), which reads, in pertinent part,

(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally.

(B) Each of the following constitutes prima-facie evidence of criminal purpose:

(1) Possession or control of any dangerous ordnance, or the materials or parts for making dangerous ordnance, in the absence of circumstances indicating the dangerous ordnance, materials, or parts are intended for legitimate use;

(2) Possession or control of any substance, device, instrument, or article designed or specially adapted for criminal use;

(3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use.

**{¶47}** As set forth in our analysis and disposition of Appellant's first and second assigned errors, testimony at trial established Tamara Mackey testified the funeral expenses had been paid in full through a private donation and a separate Go Fund Me account. The State introduced a letter [Exhibit E] to Justina Longwell stating the mausoleum entombment at Forest Hill Cemetery was paid in full, and no charges were due as the goods and services were donated.

**{¶48}** Dalesandro indicated to police Appellant's involvement in driving her to the parking lot. Further, Tamera Mackey testified at trial she observed Appellant and Dalesandro drive to Marc's, and subsequently observed Dalesandro soliciting funds for the funeral expenses and headstone for Hailey Miku.

**{¶49}** Kelly Andrews testified at trial Appellant visited Munchy's Bar and Drive-Thru on March 25, 2016. At the time, Appellant collected monies donated for the funeral expenses and headstone of Hailey Miku, which donations were given in cans left at Munchy's by Lisa Dalesandro. While at Munchy's, she observed Appellant soliciting funds in person from patrons visiting the drive-thru, stating the monies were being collected for the funeral expenses and headstone of his granddaughter. Appellant used the cans to collect the donations, and then left the emptied cans for further donations. Appellant left his name and phone number at the business in the event of larger donations.

**{¶50}** We find Appellant's convictions for theft by deceit and possession of criminal tools were not against the manifest weight nor based on insufficient evidence.

**{¶51}** The third assignment of error is overruled.

IV.

**{¶52}** In his fourth assigned error, Appellant maintains the trial court erred in imposing maximum, consecutive sentences at the May 5, 2016 sentencing.

**{¶53}** The trial court sentenced Appellant herein to 144 days on the theft by deception charge, and 180 days on the use of criminal tools charge, to run consecutively.

**{¶54}** The trial court stated on the record,

THE COURT: You can be seated.  The difficulty the Court has with accepting that explanation, Mr. McAllister, is that the evidence before the Court includes two separate instances where police on one occasion at Marc's parking lot were on the scene arriving and it's alleged that you were identified and you left instead of dealing with the police.  The second incident is the one at Munchy's whereupon the notified by the bartender that if you wanted the cans back you have to call the police.  You left in a state of agitation.  Those two facts belie your statement that what you were doing was for an honest and truthful purpose.  In each of those cases, had your interest, had your goals been absolutely forward and honest, you simply would have said, "this is my intent and purpose" to anybody who approached Ms. Dalesandro or who approached you at the time.  Even after knowing that Ms. Dalesando [sic] had been arrested, you then went to Munchy's to secure the funds from those cans, continued to address or seek or solicit additional monies and never once wanted to say, "Hey, look, if there is a problem, I know Lisa got arrested.  I'll run right down to the police department and make this right."  At no point in time have I heard you explain to the Court in your elocution, "Judge, I set up a fund in her name. it's at the local bank.  Here's where the money is.  I'm prepared to turn this over to the family for inscription."  At no point in time has the Court heard anything like that.  I find, in fact, that with you, it's just a matter of, I'll say whatever is necessary to get me out of trouble.

* * *

THE COURT: Sentence of the Court on the charge of theft. Two hundred and fifty dollars plus court costs. One hundred and eighty days in jail. I will impose one hundred and forty-four days upon you giving credit for thirty-six you've already served. With regard to the charge of possession of criminal tools. Two hundred fifty dollars plus court costs. One hundred and eighty days in jail. I will impose all one hundred and eighty days. That will be served consecutive to the charge of theft. I find the defendant's record, I find the defendant's lack of remorse, I find the nature of the actions complained about in the complaint proven by this Court absolutely justifies this. This Court has had the opportunity to watch you as you present yourself. Your demeanor, the way you appear, the way you address the Court, the way you speak about this, your absolute complete lack of any feeling in this regard requires the Court to impose this as consecutive sentences. Mr. McAllister, I don't think you care. I really don't think you care. And you present yourself as a guy that doesn't care about this. As long as you got some money out of it, that was good enough for you. And that is the impression you've given this Court. The fact that you have not ever once offered in any way, shape or form any support as to "if somebody was hurt by my actions I will give them their money back. Here's the account where it was set up." You've never, ever made that offer. You never, ever made the offer to explain to the police department how this really was just one big giant mistake. I find your actions absolutely reprehensible. That will be the sentence of the Court. Consecutive

sentences Madam Prosecutor, the Court concurs with your recommendation.

Tr. at 209-210; 211-212.

{¶55} The trial court did not consider Appellant's pre-arrest silence with respect to the finding of guilt or innocence. We find it was not improper to consider the same for purposes of sentencing. The trial court considered Appellant's conduct throughout the police investigation and during trial as a demonstration of lack of remorse. Appellant has an extensive criminal record, including thirteen convictions for theft, as noted by the State at sentencing. We find the trial court did not error in sentencing Appellant herein.

{¶56} The fourth assignment of error is overruled.

{¶57} Appellant's convictions and sentence in the Alliance Municipal Court are affirmed.

By: Hoffman, P.J.

Wise, J. and

Delaney, J. concur